UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION


1220 SOUTH OCEAN BOULEVARD, LLC,              CASE NO. 12-32609-BKC-EPK
                                             CHAPTER 11


         Debtor.
_____/


1220 SOUTH OCEAN BOULEVARD, LLC,

         Plaintiff,

vs.                                           ADV. NO.

TD BANK, N.A., successor by merger
to Mercantile Bank, and
LEGACY BANK OF FLORIDA

         Defendants.
_____/

### COMPLAINT

         Plaintiff and Debtor-in-Possession, 1220 SOUTH OCEAN BOULEVARD, LLC,

(the "Debtor"), by and through undersigned counsel, sues TD BANK, N.A., successor

by merger to Mercantile Bank ("TD Bank" or "TD"), and LEGACY BANK OF FLORIDA

("Legacy")(collectively "TD Bank" and "Legacy" are the "Defendants") pursuant to 11

U.S.C. § 105, applicable state law, and Rules 3007(b) and 7001(1) of the Federal Rules

of Bankruptcy Procedure, state:

### JURISDICTION AND VENUE

1.      This is an adversary proceeding brought by the Debtor pursuant to 11 U.S.C. § 105, applicable state law, and Rules 3007(b), and 7001(1) of the Federal Rules of Bankruptcy Procedure, seeking a monetary judgment.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and (e), and 28 U.S.C. § 157(a) and (b)(1), (b)(2)(A), (B), and (C).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.      This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §§ 157 (b)(2)(A), (B), and (C).

5.      All conditions, precedent to the filing of this action have occurred, have been performed, or have been waived.

## GENERAL ALLEGATIONS

6.      On September 21, 2012, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

7.      The Debtor's main asset is a waterfront estate home located at 1220 South Ocean Boulevard on the Island of Palm Beach (the "Estate Home").  The Estate Home is scheduled by the Debtor at a value of $74 million and is also listed for sale at a selling price of $74 million.

8.      On December 10, 2011, the Debtor obtained an appraisal of the Estate Home, which found the market value to be between approximately $65.4 million and $69.7 million.

9.      On November 6, 2012, TD Bank also obtained an appraisal of the Estate Home, which found the value to be between approximately $48 million and $62 million.

2

10.    TD Bank is a secured creditor with a claim of approximately $21.2 million. Legacy is apparently a junior participant in the foregoing TD Bank claim. Attached hereto and incorporate herein is a composite Exhibit "A", which consists of the notes, mortgage, rewards and modification documents.

11.    TD Bank filed Proof of Claim No. 2 asserting a total secured claim amount of $22,930,391.11.

12.    New Providence Capital Management Partners II, Limited ("New Providence") is a secured creditor with a claim of approximately $6.3 million.

13.    New Providence filed Proof of Claim Nos. 3-1 and 4-1 asserting a total secured claim amount of $1,092,161.19 and $6,250,256.89 respectively.

14.    On January 23, 2013, the Debtor objected to TD and New Providence proof of claims [ECF No.: 92]

15.    Dan Swanson and Karen Swanson are husband and wife.

16.    Dan Swanson is the manager for the Debtor.

17.    Dan Swanson is an officer of Addison Construction Corporation and has an ownership interest in the foregoing entity.

18.    Dan Swanson is an officer of 1220 SOUTH OCEAN BOULEVARD CORP. ("1220 CORP") and has an ownership interest in the foregoing entity.

19.    On or around September 30, 2010, Mercantile Bank ("Mercantile") merged into and has been subsequently operated as part of TD Bank.

20.    Dan Swanson had a close business relationship with John Holzberg "Holzberg"), who was a Vice President at Mercantile.

3

21.     Dan Swanson also had a close business relationship with Carl Palmer ("Palmer"), who was a President at Mercantile.

22.     Dan Swanson even socialized with the President for the entire company, Mercantile, who was from North Carolina.

23.      In 2005, Mercantile, through Holzberg and Palmer, lent money to one of the The Debtor has to develop real property located at 1275 South Ocean Boulevard, in Palm Beach, Florida.   The terms of the foregoing construction loan included the maintenance of an 80% loan to all costs.   The development was sold under construction and the loan was paid off in late 2006.

24.     Holzberg and Palmer, needing to relend the money utilized in the 1275 South Ocean loan, pursued, during late 2006 and early 2007, Dan Swanson, trying to convince him to borrow the funds.   Holzberg and Palmer promised Dan Swanson that Mercantile would be flexible regarding loan terms, including providing additional construction funding, payback periods, and loan to cost requirements.

25.     Eventually Mercantile, through Holzberg and Palmer, convinced Dan Swanson to borrow the funds to purchase 1220 South Ocean Blvd., in Palm Beach, Florida.  Holzberg and Palmer even commented at the great potential of 1220 South Ocean Blvd. because the prior loan with Mercantile was on a similar property, 1275 South Ocean Blvd., which was two doors to the South of 1220 South Ocean Blvd. Holzberg and Palmer even liked the area, which is commonly known as "Billionaires' Row."    The purchase price for 1220 South Ocean Blvd. was approximately $20.8 million plus closing costs.

4

26.     Holzberg approached his contact at Legacy, John Dover, to provide approximately a third of the funding for the purchase of 1220 South Ocean Blvd. Legacy was present when the structure of the Land Loan (defined below) and Construction Loan (defined below) occurred, including the promises made by Mercantile regarding providing sufficient funds and time to complete the development of 1220 South Ocean Blvd.

27.     On or around August 23, 2007, Dan Swanson closed on the loan with Mercantile with a loan amount of approximately $15.6 million and a term of 6 months.  It is believed Legacy participated in the foregoing loan to the extent of a third of the loan amount.  The loan was then extended for two 100 day periods (the "Land Loan").  Dan Swanson provided funds for the balance of the purchase price for the land in the approximate amount of $5.2 million in addition to $235,112 in closing costs.  Dan Swanson also paid interest on the foregoing loan.

28.     On February 23, 2008, an extension of approximately 1 month and 5 days was given.  Dan Swanson continued to fund all interest payments during this period. Karen Swanson was not a guarantee at this point in time.

29.     In March 28, 2008, the Land Loan was modified and a construction loan was made to 1220 Corp for $6,321,000 million (the "Construction Loan").  The terms of the Land Loan and the Construction Loan were for two years, from March 28, 2008 to March 28, 2010.  The Land Loan was redone in the amount of $17,279,000.  The Land Loan and the Construction Loan was for a total amount of $23,600,000.   Karen Swanson was still not a guarantee at this point in time.

30.     Mercantile and Legacy knew that the development of the real property, including the construction of the home, would take more than 2 years. Dan Swanson would not have agreed to a loan for only 2 years because he knew that it would take a minimum of 3 year to complete the development of the property plus time for marketing. In the end, it took approximately three years and three months to complete the development of the property.

31.     Mercantile and Legacy only funded $22,398,748.15 as of December 2009. Over the next seven months, between January 1, 2010 and July 31, 2010, the foregoing lenders funded an additional $335,823.51 but there was no other additional funding for the loan. Mercantile and Legacy never honored and would not fund the balance of the $23.6 million as agreed. The unfunded portion of the loan represents a $865,428.34 reduction in the loan amount for which Dan Swanson paid all closing costs and for which all agreements stated $23.6 million. In the end, the total amount funded by Mercantile and Legacy was $22,734,571.66 even though they previously agreed to a 70% loan to cost.

32.     Prior to the Construction Loan, Dan Swanson was adamant and expressed to Mercantile that the two year loan terms for the foregoing loans and the initial amount of funds were not sufficient to fully develop the property, which included the construction of a 27,000 square feet house. Holzberg and Palmer, however promised Dan Swanson, over his concerns about costs and time, that additional time and funds would be provided in order to complete the foregoing development and the loan to cost ratio would stay at 70%.

6

33.     Mercantile knew that Dan Swanson would rely on its statement and that its statements regarding additional funding and time were false.

34.     In October or November 2008, Holzberg and Palmer left Mercantile. Mercantile then refused to provide any additional funding or time, which left the project in an incomplete state.

35.     On or around March 28, 2010, when the Land Loan and Construction Loan came due, Mercantile which had now merged into TD, still did not want to extend the time or provide additional funds.  The total loan amount changed from $23,600,000 to $22,734,500 due to balance not being funded by the lender.

36.     TD provided a two month extension from March 28, 2010 to May 12, 2010.  The interest rate changed from 3.25% to 5.25%, which represents over a 60% increase in the interest rate.  Dan Swanson continued to fund all interest payments. Karen Swanson was still not a guarantee at this point in time.

37.     TD provided an additional six month extension from May to November 2010.  Dan Swanson continued to fund all interest payments and associated closing costs.  TD also required that an interest reserve account be maintained by Dan Swanson.  It was at this point that TD forced Karen Swanson to be added as a guarantor.

38.     TD then threatened to call the loans if the additional funds were not paid to TD.

39.     Dan Swanson was then forced to obtain high interest funding from a hard money lender, from an international investment company, New Providence Capital, on or around January 2011.  The foregoing loan from New Providence provided a $1.5

million pay down of the TD loans, created a $1.1 million interest reserve also for TD, and gave Dan Swanson an extension through approximately November 28, 2011.  Dan Swanson also had to fund approximately $300,000 in maintenance, commitment fees and closing costs.   Also, the interest rate with TD continued to be 5.5%.

40.    The development was completed in June 2011.

41.    On or around November 28, 2011, Dan Swanson obtained another loan from New Providence in the approximate amount of $1 million in order to extend the TD loans to approximately May 28, 2012 and provide TD with another $770,000 in interest reserves. Dan Swanson personally had to provide $501,000 to facilitate the foregoing transaction.

42.    Due to Mercantile and Legacy's failure to honor a 70% loan to cost ratio, Dan Swanson had to find approximately $7 million in additional funds in order to complete the development of the property.  The foregoing funding was in addition to the approximately $14 million provided by 1220 CORP.

43.    The borrower on the Land Loan and Construction Loan is the Debtor.  On October 1, 2012, TD Bank filed a State Court action against 1220 South Ocean Boulevard Corp., Dan E Swanson, Karen Swanson, and Addison Construction Corporation, in the case style *TD Bank, N.A., Successor by Merger to Mercantile Bank v. 1220 South Ocean Boulevard, Corp et al,* case number 502012CA018277XXXXMB, pending in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida, seeking to recover from the guarantors.

44. On December 21, 2012, the defendants in the above State Court action answered the complaint, filed a counter-claim against TD and filed a cross-claim against Legacy.

## COUNT I BREACH OF CONTRACT
## AGAINST TD AS SUCCESSOR TO MERCANTILE

45. Defendants reallege paragraphs 1 to 44.

46. Mercantile promised Dan Swanson that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

47. Dan Swanson accepted Mercantile's promises of sufficient funding and time by entering into the Land Loan and the Construction Loan with Mercantile.

48. Mercantile failed to provide sufficient time and sufficient funding.

49. As such, the Debtor has been damaged by Mercantile's breach of its agreement.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from the breach of the agreement between the parties, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT II BREACH OF FIDUCIARY DUTY
## AGAINST TD AS SUCCESSOR TO MERCANTILE

50. Defendants reallege paragraphs 1 to 44.

51. Mercantile had significant influence over Dan Swanson.

52. Mercantile and Dan Swanson jointly evaluated proposed development projects.

53.     Mercantile encouraged Dan Swanson to invest in the 1220 South Ocean Blvd. property with promises of continued support via funding and loan terms providing adequate time to develop the property.

54.     Dan Swanson relied on Mercantile expertise and promise in entering into the Land Loan and Construction Loan.

55.     As such, Dan Swanson placed his trust and confidence in Mercantile. Furthermore, the close relationship with Holzberg and Palmer, made it clear to Dan Swanson that he had Mercantile's trust and confidence.

56.     Mercantile's failure to provide the additional funding and additional time to Dan Swanson for the development at issue was a breach of its fiduciary duty to Dan Swanson and thereby the Debtor.

57.     The Debtor has incurred losses as result of Mercantile's breach of its fiduciary duty.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from Mercantile's breach of its fiduciary duty, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT III FRAUD AGAINST
## TD AS SUCCESSOR TO MERCANTILE

58.     Defendants reallege paragraphs 1 to 44.

59.     Mercantile promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

60.     Mercantile knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson.

61.     However, Mercantile made the promises of sufficient funding and time in order to induce Dan Swanson to enter into the Land Loan and Construction Loan.

62.     The Debtor has suffered damages based on its reliance on Mercantile's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from the fraud committed by TD, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT IV CONSTRUCTIVE FRAUD
## AGAINST TD AS SUCCESSOR TO MERCANTILE

63.     Defendants reallege paragraphs 1 to 44.

64.     Mercantile and Dan Swanson jointly evaluated proposed development projects.

65.     Mercantile encouraged Dan Swanson to invest in the 1220 South Ocean Blvd. property with false promises of continued support via funding and loan terms providing adequate time to develop the property.

66.     Dan Swanson relied on Mercantile's expertise and false promises in entering into the Land Loan and Construction Loan.

67.     Mercantile failed to provide the additional funding and time as previously promised.

11

68.    Dan Swanson placed his trust and confidence in Mercantile.  Furthermore, the close relationship with Holzberg and Palmer, made it clear to Dan Swanson that he had Mercantile's trust and confidence.

69.    Mercantile's failure to provide the additional funding and additional time to Dan Swanson and thereby the Debtor for the development at issue was a breach of its duty to the Debtor.

70.    The Debtor has incurred losses as result of Mercantile's false promises.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from Mercantile's constructive fraud, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT V FRAUD IN THE INDUCEMENT
## AGAINST TD AS SUCCESSOR TO MERCANTILE

71.    Defendants reallege paragraphs 1 to 44.

72.    Mercantile promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

73.    Mercantile knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson.

74.    However, Mercantile made the promises of sufficient funding and time in order to induce Dan Swanson to enter into the Land Loan and Construction Loan.

75.    The Debtor has suffered damages based on its reliance on Mercantile's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter

12

judgment in its favor and against TD for damages the Debtor sustained from the fraud in the inducement committed by TD, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT VI FRAUDULENT MISREPRESENTATION AGAINST TD AS SUCCESSOR TO MERCANTILE

76.  Defendants reallege paragraphs 1 to 44.

77.  Mercantile promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

78.  Mercantile knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson.

79.  However, Mercantile made the promises of sufficient funding and time in order to induce Dan Swanson to enter into the Land Loan and Construction Loan.

80.  The Debtor has suffered damages based on its reliance on Mercantile's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from TD's fraudulent misrepresentations, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT VII NEGLIGENT MISREPRESENTATION AGAINST TD AS SUCCESSOR TO MERCANTILE

81.  Defendants reallege paragraphs 1 to 44.

13

82.     Mercantile promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

83.     Mercantile should have known that it wouldn't be able to provide sufficient funding and time to Dan Swanson.

84.     However, Mercantile made the promises of sufficient funding and time in order to induce Dan Swanson to enter into the Land Loan and Construction Loan.

85.     Dan Swanson and thereby the Debtor reasonable relied on the representations made by Mercantile based on his prior business relationship with Mercantile.

86.     The Debtor has suffered damages based on its reliance on Mercantile's false statements.

        **WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against TD for damages the Debtor sustained from TD's negligent misrepresentations, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT VIII BREACH OF CONTRACT
## AGAINST LEGACY BANK OF FLORIDA

87.     Defendants reallege paragraphs 1 to 44.

88.     Legacy promised Dan Swanson that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

89.     Dan Swanson accepted Legacy's promises of sufficient funding and time by entering into the Land Loan and the Construction Loan with Legacy.

14

90.   Legacy failed to provide sufficient time and sufficient funding.

91.   As such, The Debtor has been damaged by Legacy's breach of its agreement.

**WHEREFORE,** the Debtor has respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from the breach of the agreement between the parties, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT IX BREACH OF FIDUCIARY DUTY AGAINST LEGACY BANK OF FLORIDA

92.   Defendants reallege paragraphs 1 to 44.

93.   Legacy had significant influence over Dan Swanson.

94.   Legacy and Dan Swanson jointly evaluated proposed development projects.

95.   Legacy encouraged Dan Swanson to invest in the 1220 South Ocean Blvd. property with promises of continued support via funding and loan terms providing adequate time to develop the property.

96.   Dan Swanson relied on Legacy expertise and promise in entering into the Land Loan and Construction Loan.

97.   As such, Dan Swanson placed his trust and confidence in Legacy. Furthermore, the close relationship with Holzberg and Palmer with John Dover made it clear to Dan Swanson that he had Legacy's trust and confidence.

98.   Legacy's failure to provide the additional funding and additional time to Dan Swanson are thereby the Debtor for the development at issue was a breach of its fiduciary duty to Dan Swanson and thereby the Debtor.

15

99.     The Debtor has incurred losses as result of Legacy's breach of its fiduciary duty.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from Legacy's breach of its fiduciary duty, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

### COUNT X FRAUD
### AGAINST LEGACY BANK OF FLORIDA

100.    Defendants reallege paragraphs 1 to 44.

101.    Legacy promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

102.    Legacy knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson.

103.    However, Legacy made the promises of sufficient funding and time in order to induce Dan Swanson and thereby the Debtor to enter into the Land Loan and Construction Loan.

104.    The Debtor has suffered damages based on its reliance on Legacy's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from the fraud committed by Legacy, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT XI CONSTRUCTIVE FRAUD
## AGAINST LEGACY BANK OF FLORIDA

105.   Defendants reallege paragraphs 1 to 44.

106.   Legacy and Dan Swanson jointly evaluated proposed development projects.

107.   Legacy encouraged Dan Swanson to invest in the 1220 South Ocean Blvd. property with false promises of continued support via funding and loan terms providing adequate time to develop the property.

108.   Dan Swanson relied on Legacy's expertise and false promises in entering into the Land Loan and Construction Loan.

109.   Legacy failed to provide the additional funding and time as previously promised.

110.   As such, Dan Swanson placed his trust and confidence in Legacy. Furthermore, the close relationship with Holzberg and Palmer with John Dover, made it clear to Dan Swanson that he had Legacy's trust and confidence.

111.   Legacy's failure to provide the additional funding and additional time to Dan Swanson for the development at issue was a breach of its duty to Dan Swanson and thereby the Debtor.

112.   The Debtor has incurred losses as a result of Legacy's false promises.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from Legacy's constructive fraud, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT XII FRAUD IN THE INDUCEMENT
## AGAINST LEGACY BANK OF FLORIDA

113.    Defendants reallege paragraphs 1 to 44.

114.    Legacy promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

115.    Legacy knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson and thereby the Debtor.

116.    However, Legacy made the promises of sufficient funding and time in order to induce Dan Swanson and thereby the Debtor to enter into the Land Loan and Construction Loan.

117.    The Debtor has suffered damages based on its reliance on Legacy's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from the fraud in the inducement committed by Legacy, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT XIII FRAUDULENT MISREPRESENTATION
## AGAINST LEGACY BANK OF FLORIDA

118.    Defendants reallege paragraphs 1 to 44.

119.    Legacy promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

120.    Legacy knew that it wouldn't be able to provide sufficient funding and time to Dan Swanson and thereby the Debtor.

121.    However, Legacy made the promises of sufficient funding and time in order to induce Dan Swanson and thereby the Debtor to enter into the Land Loan and Construction Loan.

122.    The Debtor has suffered damages based on its reliance on Legacy's false statements.

WHEREFORE, the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from Legacy's fraudulent misrepresentations, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

## COUNT XIV NEGLIGENT MISREPRESENTATION
## AGAINST LEGACY BANK OF FLORIDA

123.    Defendants reallege paragraphs 1 to 44.

124.    Legacy promised that it would provide sufficient funding and time to fully develop the property located at 1220 South Ocean Blvd., in Palm Beach County, Florida.

125.    Legacy should have known that it wouldn't be able to provide sufficient funding and time to Dan Swanson and thereby the Debtor.

126.    However, Legacy made the promises of sufficient funding and time in order to induce Dan Swanson and thereby the Debtor to enter into the Land Loan and Construction Loan.

127.    Dan Swanson reasonable relied on the representations made by Legacy based on his prior business relationship with Legacy.

19

128.   The Debtor has suffered damages based on its reliance on Legacy's false statements.

**WHEREFORE,** the Debtor respectfully requests that the Court enter judgment in its favor and against Legacy for damages the Debtor sustained from Legacy's negligent misrepresentations, including awarding its attorneys' fees and costs, and for any other relief that the Court deems is just and proper.

*I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualification to practice in this court set forth in Local Rule 2090-1(A).*

RAPPAPORT OSBORNE & RAPPAPORT, P.L.
Attorneys for Plaintiff
Suite 203, Squires Building
1300 North Federal Highway
Boca Raton, Florida 33432
Telephone:  (561) 368-2200

BY:              /s/
     KENNETH S. RAPPAPORT, ESQ.
     FL Bar No. 132333
     TAREK KIEM, ESQ.
     FL Bar No. 637041